UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

      Plaintiff,

vs.                              CASE NO.:  8:03-CV-2353-T-17TBM

PEOPLES CREDIT FIRST, LLC,
CONSUMER PREFERRED, LLC,
f/k/a CONSUMER FIRST, LLC,
SHAUN OLMSTEAD and JULIE CONNELL,

      Defendants.

_____/

**DEFENDANT CONNELL'S OBJECTIONS TO
MAGISTRATE JUDGE THOMAS B. McCOUN III'S
<u>REPORT AND RECOMMENDATION</u>**

Defendant, JULIE CONNELL ("Connell"), by and through her undersigned

attorneys, pursuant to 28 U.S.C. § 636 and local rule 6.02(a) hereby files her

objections to Magistrate Judge Thomas B. McCoun III's Report and

Recommendation ("Report and Recommendation") and states as follows:

**<u>Background</u>**

1.     On November 10, 2003, this Court entered a Temporary

Restraining Order with Asset Freeze and Other Equitable Relief ("TRO") (Doc. 9).

2.     On December 17, 2003, the Federal Trade Commission ("FTC")

and the Defendants, Peoples Credit First, LLC ("PCF") and Consumer Preferred,

LLC formerly known as Consumer First, LLC ("Consumer"), Shaun Olmstead

("Olmstead"), and Julie Connell (collectively "Defendants") through their then

attorney, Thomas C. Little, Esq. ("Little"), entered into a Stipulated Order of

Preliminary Injunction ("Preliminary Injunction"), which was approved by this Court in an order dated December 23, 2003 (Doc. 26).

3.      On January 15, 2004, Mark Bernet ("Receiver") as receiver for PCF and Consumer filed Receiver's Verified Motion for Entry of Order Directing Shaun Olmstead, Julie Connell, Thomas C. Little, Esquire, Billie Jo Pardee, and Dee Hoffman to Show Cause Why They Should Not Be Held in Contempt of This Court for Willful Violations of the Court's Order[1] ("Motion to Show Cause") (Doc. 38) for conduct that occurred between the entry of the TRO on November 10, 2003 and the entry of the Preliminary Injunction on December 23, 2003.

4.      This Court entered an Order to Show Cause on January 21, 2004 (Doc. 40).

5.      An evidentiary hearing was held on March 10, 2004 and April 21, 2004 before Magistrate Judge Thomas B. McCoun III ("Magistrate Judge McCoun") concerning three matters:

a.      alleged alteration of a document on December 12, 2003 ("Document Alteration");

b.      transfer of $30,000 from John Clements to Little in November of 2003  ("$30,000"); and,

c.      the filing of bankruptcy petitions, on November 18, 2003, for six companies: Dynamic Fulfillment and Services, LLC (DF&S), Nu Products, LLC d/b/a Royal Pineapple ("Nu Products"), Product Dynamics,

---

[1] The conduct, which was the subject of the Motion to Show Cause, took place prior to the receivership being expanded to include Dynamic Fulfillment and Services, LLC on January 14, 2004.

LLC, Generation Housing, LLC, Foundation Commercial Properties, LLC, and SoHo Holdings, LLC ("Bankruptcy Filings").[2]

6.      Including the contempt hearing on March 10, 2004, the Receiver claims to have incurred expenses totaling between $10,000 and $12,000 associated with bringing the Motion to Show Cause. (Doc. 119 p. 130 lines 23-25 through p. 131 lines 1-5).

7.      On April 19, 2004, this Court approved the Joint Motion by Mark Bernet for Approval of Settlement, to Vacate Order to Show Cause as to Thomas C. Little (Doc. 131), under which Little gave the Receive $30,000 in exchange for the Receiver agreeing to not pursue the contempt motion and the pending motion for sanctions in the United States Bankruptcy Court against Little.[3]

8.      On June 4, 2004, pursuant to Magistrate Judge McCoun's direction, Connell submitted Proposed Findings of Fact (Doc. 142) and Memorandum of Law (Doc. 143), which are incorporated by reference.

9.      On July 9, 2004, Magistrate Judge McCoun filed his Report and Recommendation  (Doc. 168).

---

[2]   Ms. Connell signed the bankruptcy petitions as the manager of DF&S and Nu Products; but had no connection with the other four companies that filed bankruptcy.

[3] At a preliminary hearing on May 3, 2004, Judge Glenn denied Receiver's Motion for Sanctions against Connell and Olmstead in connection with the filing of the bankruptcy petitions. Judge Glenn in making his ruling stated: "Ms. Connell, it has been represented that she has limited familiarity with the bankruptcy laws and relied on bankruptcy counsel in the filing of those cases. It's not an easy area of the law. And I believe on that basis, it is appropriate not to grant the motions as they would relate to Ms. Connell." (Transcript of Entire Hearing on Continued Hearing on Receiver's Motion for Sanctions May 3, 2004, p. 45 line 19 through p.46 line 2).

10.     Connell objects to the Report and Recommendation as to the transfer of the $30,000 from Clements to Little and the bankruptcy filings as set forth below.   A detailed analysis of these points is contained in Connell's previously filed memorandum of law (Doc. 143).

### Transfer of the $30,000

11.     In footnote 8, of the Report and Recommendation, Magistrate Judge McCoun determines that the $30,000 "was an unsecured loan intended at some point to be paid back to Mr. Clement."

12.     "A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows." Calcasieu-Marine Nat'l Bank v. American Employers' Ins. Co., 533 F.2d 290, 296 (5th Cir. 1976) (quoting In re Grand Union Co., 219 F. 353, 356 (2d Cir. 1914)).

13.     Clements, the purported lender, testified that if the $30,000 was to be paid back, Olmstead would be the only party responsible for paying it back (Doc. 119 p. 54 lines 1-4, p. 67 lines 2-4 and p. 71 lines 13-23).

14.     The Receiver failed to set forth any evidence that Connell had any obligation to repay the $30,000 or any portion of that amount.

15.     As a matter of law Connell could not have violated the TRO by receiving a loan because she did not have an obligation to pay back the $30,000. Simply put, there was no loan to her.

16.     Magistrate Judge McCoun also states "Even if the money was a gift to [Connell], she violated the TRO in pursuing this money."   This too is erroneous.

17.     There are several elements necessary to prove a gift from Clements to Connell which are lacking in this case:

> (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over him; (5) a delivery by the donor to the donee of the subject matter of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee.

Estate of Whitt v. Commissioner, 751 F.2d 1548, 1560-1561 (11th Cir. 1985).

18.     Clements, now the purported donor, testified and signed an affidavit, which was prepared by the Receiver that clearly stated that Clements gave the money to Olmstead and not Connell.  (Doc. 119 p. 66 lines 6-19 and p. 122 lines 5-8).

19.     Olmstead's affidavit, which the Receiver introduced into evidence (Doc. 140 p. 227 line 16 through p. 230 line 17), stated that Olmstead (not Connell) requested John Clements to directly pay Thomas C. Little the sum of $30,000 and that Olmstead (not Connell) allocated the distribution of those funds. (¶ 18 of Olmstead's affidavit).

20.     Money was allocated by Olmstead and/or Little to Connell and Connell's companies (DF&S and Nu Products) for legal fees; however Connell

did not specifically request or direct any money be paid on behalf of her or her companies. (Doc. 140 p. 158 lines 3-7).

21.     Connell had no knowledge that money had been paid on her behalf until the allocation of the monies were set forth in a document filed with the Bankruptcy Court, signed by Little. (Doc. 140 p. 171 line 23 through p. 172 line12 and p. 180 lines 8-19).

22.     As to Connell, there was no transfer of title and control, delivery or acceptance.  Hence, there can be no gift to her.

23.     Clearly the record does not support a finding that the $30,000 was either a loan or a gift to Connell.

24.     Clear and convincing evidence as required to prove that Connell's actions as to the transfer of $30,000 were contemptuous. <u>McGregor v. Chierico</u>, 206 F.3d 1378, 1383 (11th Cir. 2000).  This burden was not met.

<div align="center">**<u>Bankruptcy Filings</u>**</div>

25.     The TRO prohibited the "filing by the Defendants of a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., as to the Receivership Defendants." (Doc. 9 Section XII.E) (emphasis supplied).

26.     In the TRO, "Receivership Defendants" is a defined term that means PCF and Consumer <u>but does not include other entities</u>. (Doc. 9 Section X).

27.     In the later Preliminary Injunction (arrived at presumably as a result of the bankruptcy filings in question), "Receivership Defendants" is now more broadly defined to now mean not only PCF and Consumer but:

<div align="center">6</div>

either of them by whatever names each might be known, as well as their officers, agents, directors, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, branches or business divisions, affiliates, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, either acting directly or through any trust, corporation, subsidiary, division or other entity.
(Doc. 26 p. 3 ¶2)

28.    Both the TRO in Section XII.E and the Preliminary Injunction in

Section XIII.E  state:

.   .   .the Defendants and all customers, principles, investors, creditors, stockholders, lessors, and other persons, seeking to establish or enforce any claim, right or interest against or on behalf of the Receivership Defendants, or any of its subsidiaries or affiliates, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers, and their deputies, and their respective attorneys, servants, agents and employees be and are hereby stayed from:

.   .   .

E.    Doing any act or thing whatsoever to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or its subsidiaries or affiliates, including the filing by the Defendants of a petition for relief under the United States Bankruptcy Code, 11 U.S.C. §21 et seq.. as to the Receivership Defendants.

(Doc. 9 pages 16-18 and Doc. 26 pages 17 &19)

Thus the filing of a bankruptcy petition is prohibited only on behalf of the

Receivership Defendants, which at the time of the TRO were only PCF and

Consumer.   Connell did not file any bankruptcy petition for either of these two

entities.

29.     The Report and Recommendation states " . . . Section XII.E of the TRO is illustrative only and is not conclusive as to the limitations intended by that provision." (Doc. 168 p. 11).

30.     This finding ignores the specific language that was drafted by the FTC and the fact that the definition of "Receivership Defendants" was expanded from the narrow definition contained in the TRO (Doc. 9 Section X) to a broader definition in the Preliminary Injunction to include affiliates (Doc. 26 p. 3 ¶2) without changing the language relating to the ability of the Defendants to file petitions in the Bankruptcy Court. *A fortiori* the TRO does not bar the filings.

31.     In order for the behavior to be contemptuous there must be a clear and unambiguous court order which has been violated.  McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000).

32.     Little testified that reading paragraph 12B of the TRO in conjunction with paragraph 12E, leads one to the conclusion that only the "Receivership Defendants" were prohibited from filing a petition for relief under the United States Bankruptcy Code 11 U.S.C. § 101 et seq.  (Doc. 140 p. 256 lines 6-14). At the time only PCF and Consumer were "Receivership Defendants."

33.     The TRO is, at best, ambiguous as to whether Dynamic Fulfillment and Services, LLC or Nu Products, LLC d/b/a Royal Pineapple were prohibited from filing petitions for relief under the United States Bankruptcy Code 11 U.S.C. § 101 et seq., as the TRO only prohibited the "Receivership Defendants" from filing bankruptcy. (Doc. 9 Section XII.E).

34.     Connell objects to the Report and Recommendation's position that the evidence supports by clear and convincing evidence that Connell's actions as to the bankruptcy filings were contemptuous.

35.     Magistrate Judge McCoun states that "the Receiver concedes that the TRO does not define the term affiliate" and that definition of "Receivership Defendants" was not expanded to include affiliates until after the bankruptcy petitions were filed on behalf of Dynamic Fulfillment and Services, LLC or Nu Products, LLC d/b/a Royal Pineapple (Doc. 168 p. 9 FN 9); and, that Little testified that the TRO was "sufficiently ambiguous to permit Dynamic Fulfillment and Services, LLC or Nu Products, LLC d/b/a Royal Pineapple to file the bankruptcy petitions (Doc. 168 p. 9).    More importantly Magistrate Judge McCoun recognizes that the TRO is, at best, ambiguous stating "The provisions of the TRO are not <u>so ambiguous</u> to preclude such a findings."  (Doc. 168 p.14) (emphasis supplied).  If the TRO is ambiguous enough to be so described then contempt of an <u>unambiguous</u> order cannot be proven by clear and convincing evidence.

### Sanctions

36.     In the alternative, if the Court accepts the Report and Recommendation as to whether Connell violated the TRO by accepting a loan or gift and by causing the filing of bankruptcy petitions on behalf of Nu Products and DF&S, the Court should reconsider Magistrate Judge McCoun's Report and Recommendation as to the amount of the sanction.

37.    "Civil contempt is a remedial sanction and is designed to obtain compliance with court orders or to compensate for damages resulting from non-compliance." In re: Spanish River Plaza Realty Co., Ltd., 155 B.R. 249, 253 (Bankr. S.D. Fla. 1993).

38.    The Receiver has been compensated through the settlement with Little in the amount of $30,000 and the Receiver claims to have incurred expenses totaling between $10,000 and $12,000 associated with bring the motion to show cause.

39.    Although reliance on counsel is not a defense as to the finding of civil contempt, it may be considered to mitigate the damages this Court may award. SEC v. First Financial Group of Tx, Inc., 659 F.2d 660, 670 (5th Cir. 1981). Given the complex nature of the bankruptcy rules it is proper to reduce the amount of sanctions when filing the petitions was done on advice of counsel.  As well, the Receiver has received compensation for its alleged damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following:  VALERIE M. VERDUCE, ESQUIRE, RONALD E. LAITSCH, ESQUIRE, MARK BERNET, ESQUIRE, RICHARD OLIVER, ESQUIRE, JON TAYLOR GATTO, ESQUIRE, THOMAS C. LITTLE, ESQUIRE, and ALBERT C. WILLIAMS, ESQUIRE. I further certify that I mailed the foregoing documents and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: HANS C. BEYER, ESQUIRE, Buchanan

Ingersoll, P.C., SunTrust Financial Centre, 401 E. Jackson Street, Suite 2500,

Tampa, Florida 33602; DAVID A. MANEY, ESQUIRE and LEE STATTON

DAMSKER, ESQUIRE, Maney, Damsker, Harris & Jones, P.A., P.O. Box

172009, Tampa, FL  33672

<div style="margin-left: 40%;">

S/ Stephen J. Wein
STEPHEN J. WEIN, ESQUIRE
Fla. Bar No. 212814
BATTAGLIA, ROSS, DICUS & WEIN, P.A.
P.O. Box 41100
St. Petersburg, Florida 33743-1100
Telephone No. (727) 381-2300
Facsimile No. (727) 343-4059
E-mail: swein@brdwlaw.com
ATTORNEYS FOR DEFENDANT CONNELL

</div>