UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff(s),

v.                                 CASE NO. 8:03-CV-2353-T-17TBM

PEOPLES CREDIT FIRST,
LLC, et al.,

    Defendant(s).

_____/

ORDER

This cause is before the Court on:

Dkt. 38 Motion for Entry of Order of Contempt
Dkt. 40 Order to Show Cause
Dkt. 55 Response
Dkt. 56 Response
Dkt. 168 Report and Recommendation
Dkt. 181 Notice of Receiver's Costs
Dkt. 182 Objection to Report and Recommendation
Dkt. 186 Exhibits
Dkt. 191 Objection to Receiver's Costs

The Receiver's Verified Motion is directed to Shaun Olmstead, Julie Connell, Thomas C. Little, Esq., Billie Joe Pardee and Dee Hoffman.

Thomas C. Little, Esq. entered in to a settlement agreement, which the Court has approved.

In the Report and Recommendation, Judge McCoun makes the following recommendations:

Case No. 8:03-CV-2353-T-17TBM

1. That Ms. Pardee and Ms. Hoffman did not violate the TRO and therefore are not in contempt of court;

2. That Mr. Olmstead and Ms. Connell violated the TRO by procuring a $30,000 loan from Mr. Clements and causing bankruptcy petitions to be filed on behalf of Dynamic Fulfillment Services, Product Dynamics and Nu Products and are therefore in contempt of court;

3. As sanctions for this conduct, the Receiver is entitled to compensation in the amount of $6,666 with respect to work and expenses related to these contempt proceedings through March 10, 2004, and such additional sums reasonably incurred as fees and costs on this motion (submitted within the ten day objection period); and

4. That Mr. Olmstead and Ms. Connell shall be jointly and severally liable for such sums as are ultimately awarded the Receiver. Such amounts shall be payable from their personal property, not from the frozen assets.

Defendant Connell has filed Objections to the Report and Recommendation. The Court will make a _de novo_ determination of the findings to which Defendant objects, pursuant to 28 U.S.C. Sec. 636(b)(1)(c). Defendant Connell objects to the Report and Recommendation as to the transfer of the $30,000 from Clements to Little and the subsequent bankruptcy filings. Defendant argues that the evidence is not clear and convincing that Defendant Connell's actions were contemptuous. Defendant Connell also objects to the imposition of sanctions.

The Court has independently examined the pleadings, including the exhibits, the transcripts of the evidentiary hearing of March 10, 2004 and April 21, 2004, and the recording of those hearings.

2

Case No. 8:03-CV-2353-T-17TBM

I. Background

This case is an action under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. Sec. 53(b), for preliminary and permanent injunctive relief, restitution, rescission or reformation of contracts, disgorgement, and other equitable relief for Defendants' deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. Sec. 45(a).

The Court entered a temporary restraining order, with an asset freeze and appointment of Receiver (Dkt. 9) on November 10, 2003. The scope of the temporary restraining order was extremely broad. The restraining order applies to the Defendants in this case, defined in the order as follows:

> "**Defendants**" means Peoples Credit First, LLC, Consumer Preferred, LLC, formerly known as Consumer First, LLC, Shaun Olmstead and Julie Connell, and each of them by whatever names each might be known, as well as their officers, agents, directors, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, branches or business divisions, affiliates, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other entity.

On November 17, 2003, a status hearing as to the preliminary was conducted before United States Magistrate Judge Thomas B. McCoun, III (Dkt. 120). At that hearing, Receiver Mark Bernet stated:

3

Case No. 8:03-CV-2353-T-17TBM

> "Your Honor, I'm going to be filing a Motion to Expand the Receivership. When we took possession of the premises of the two companies, we found that there were multiple companies, all of which are all interrelated and have caused problems structurally for me as receiver." (Dkt. 120, p. 12)

A hearing on the motion for entry of preliminary injunction was scheduled for November 18, 2003 before Judge McCoun. At the hearing, the parties consented to the extension of the terms of the TRO for 45 days to permit settlement discussions to take place (Dkt. 16). The parties later entered a stipulated preliminary injunction (Dkt. 24), which was granted (Dkt. 26).

On November 18, 2003, Defendants Olmstead and Connell commenced bankruptcy proceedings for six limited liability companies: Dynamic Fulfillment & Services, LLC, Nu Products, LLC d/b/a Royal Pineapple, Generation Housing, LLC, Foundation Commercial Properties, LLC, Soho Holdings, LLC, and Product Dynamics, LLC. The Receiver moved to dismiss the bankruptcy cases. On December 24, 2003, the Bankruptcy Court entered an order dismissing the Dynamic Fulfillment and Nu Products cases. The four remaining bankruptcy cases were later dismissed.

At the hearing on the Emergency Motion to Dismiss the Chapter 11 cases of Dynamic Fulfillment and Nu Services, Judge Glenn dismissed both cases for two reasons. Judge Glenn found that the TRO was broad enough to prevent the corporations from transacting any business and disposing of any funds, so that a Chapter 11 cases could not be pursued. The second reason was that the cases were filed not for purposes of reorganization but to frustrate other appropriately proceeding litigation. Judge Glenn said:

4

Case No. 8:03-CV-2353-T-17TBM

> "As I look at the schedules and at these files, the only conclusion that I can reach is that this is not a case that was filed because of overwhelming pressures of debt or a necessity to reorganize because of business pressures, but it appears to be that these were filed to avoid the confrontations that were imminent in the District Court litigation.

At the hearing on the Motion to Dismiss Case for Product Dynamics, Soho Holdings and Generation Housing, Judge Glenn stated his reasons for the dismissal:

> "The second general reason, which would independently support this dismissal of these cases, is the dismissal for cause for bad faith filings. I can't see a reason that these cases were filed except for the purposes of frustrating the District Court's proceedings.
>
> The corporations apparently have substantial assets that are not pledged, their initial schedules don't show a great deal of debt, and it seems from the circumstances of these cases that there were filed to protect the assets from the appointment of a Receiver by the District Court.
>
> Additionally, Mr. Tinker points out a list of problems: No schedules. No statement of financial affairs. The person who has operated the corporations did not appear at the 341 meeting, rather a person elected one day before the 341 meeting appeared who had little knowledge of the corporations. No monthly reports have been filed. Quarterly fees haven't been paid. No compliance with the Trustee's guidelines...."

(Dkt. 100, Ech. 4).

5

Case No. 8:03-CV-2353-T-17TBM

Thomas C. Little filed the bankruptcy proceedings on behalf of Defendants Olmstead and Connell. Thomas C. Little entered into a settlement with the Receiver in the amount of $30,000.

II. $30,000 Fee and Cost Retainer

Defendant argues that: 1) as a matter of law, Defendant could not have violated the TRO by receiving a loan because she did not have an obligation to pay back the $30,000; and 2) the elements of a gift are not present, and Defendant did not specifically request or direct any money be paid on behalf of her or her companies. Defendant Connell argues that Defendant Olmstead's affidavit states that Defendant Olmstead requested John Clements to pay Thomas C. Little $30,000 and that Defendant Olmstead allocated the distribution of those funds. Defendant Connell denies any knowledge that money had been paid on her behalf until the allocation of the monies were set forth in a document filed with the Bankruptcy court (Dkt. 140, pp. 171-172 and p. 180).

The Court cannot look to a promissory note or written agreement to determine what the parties to the transaction intended the $30,000 to be. The Court must determine whether Defendant Connell knew that money was going to be paid for her benefit based on circumstantial evidence. The bare facts of the transaction are that John Clements paid Thomas Little $30,000 to perform legal services for Shaun Olmstead and Julie Connell.

Case No. 8:03-CV-2353-T-17TBM

Defendant Connell testified in her deposition (Dkt. 140, pp. 181-185) that she asked John Clements for the money. At the evidentiary hearing, Defendant testified that she was confused in her deposition, that she did not ask for the money, but knew the money was for her companies' benefit. Defendant Connell further testified that her first knowledge that money was obtained for her benefit was after the bankruptcies were filed, in a document filed by Thomas Little (Dkt. 140, pp. 171-172). Defendant Connell further testified that the money was to be used by Defendant Olmstead to defend this case. In the Report and Recommendation, this testimony was found not to be credible.

Two bankruptcy petitions were filed on behalf of Defendant Connell. The petitions were prepared by her counsel, Thomas Little. The fact that the petitions were filed convinces the Court that Thomas Little and Defendant Connell had some arrangement as to how the fees and costs for those petitions would be paid. Even if the financial arrangement was made by another party, Thomas Little and Defendant Connell must have agreed as to the fees and costs. Defendant Connell signed the petitions, and Defendant Connell was Thomas Little's client. If Shaun Olmstead alone asked John Clements for the money, there was a gift from Shaun Olmstead to Julie Connell, with constructive delivery of the gift to Thomas Little to render services on behalf of Julie Connell.

Defendant Connell testified during the evidentiary hearing that the bankruptcy filings were made to preserve the companies that were not part of this litigation (Dkt. 140, p. 152). Defendant Connell testified as follows:

Case No. 8:03-CV-2353-T-17TBM

Q. So, you were trying to prevent them from being drawn into this litigation?

A. Not necessarily, I was just trying to keep the business running and maintain its businesses.

Q. Okay, preserve it from this litigation, what does that mean?

A. 'Cause it was not a part of this litigation. So I was trying to preserve it and keep the business operating because the Receiver was refusing to let us operate the businesses.

Q. And so, you believed that by filing the bankruptcy that would stop the Receiver from interfering with you running the businesses, correct?

A. No, that's not what I said.

Q. Well, tell me what you hoped to gain by filing the bankruptcy petitions as it relates to the receivership?

Mr. Wain: Objection. Asked and answered.

The Court: I think it has. She said she did it to preserve the companies.

Q. Were the companies insolvent at that time, were they bankrupt?

A. I felt they were in a sense because the Receiver had taken the companies and he was not allowing me to run them.

Q. So, the purpose of filing the bankruptcy was to prevent the Receiver from taking the companies and running them himself, correct?

Mr. Wain: Objection, your Honor.

A. No.

8

Case No. 8:03-CV-2353-T-17TBM

> Q. Isn't that what you just told us, ma'am?
>
> A. I wasn't--I did not file the bankruptcies to prevent the Receiver from doing anything. So, the answer to that is, no.

(Dkt. 140, pp. 152-154). The above colloquy shows that in April, 2004, Defendant Connell continued to deny under oath that the bankruptcy filings were made in bad faith, when all of the bankruptcy cases had already been dismissed as bad faith filings, purposely filed to interfere with the present case. The above testimony lacks credibility, and this leads the Court to conclude that Defendant Connell's testimony about other matters lacks credibility.

The question that was posed in the deposition was straightforward: did you ask for the money? Defendant Connell admitted she did. Witnesses can sometimes be confused in depositions, but the testimony at the evidentiary hearing convinces the Court that witness confusion is not what happened here. Defendant Connell's testimony is an attempt to distance herself from actual participation in obtaining the money, when it is a fact that petitions were filed for Defendant Connell's benefit. The Court recalls Defendants Olmstead and Connell carried on a close relationship for four years. Defendant Olmstead loaned Defendant Connell $100,000 to start her companies. Both filed bankruptcy petitions at the same time for interrelated companies, using the same counsel. Even if Defendant Connell's testimony was true that Defendant Olmstead alone asked for the money, and the Court does not believe that it is true, Defendant Connell accepted the benefit of the money.

9

Case No. 8:03-CV-2353-T-17TBM

After consideration, the Court overrules Defendant Connell's objection to the Report and Recommendation as to this issue.

II. Bankruptcy Filings

Defendant Connell objects to the finding that the bankruptcy filings were in contempt of the TRO because the TRO does not define "affiliates."

Section XII E of the TRO states Defendants are prohibited from:

> Doing any act or thing whatsoever to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or its subsidiaries or affiliates, including the filing by Defendants of a petition for relief under the United States Bankruptcy Code, 11 U.S.A. Sec. 101 et seq., as to the Receivership Defendants.

The Court finds the bankruptcy filings plainly fall into the category of "Doing any act...whatsoever to interfere with the Receiver taking control...or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or its subsidiaries or affiliates...." The specific reference to the bankruptcy proceedings of the Receivership Defendants is only one example of the possible acts that could have been done. The Bankruptcy Court found that the purpose of the bankruptcy filings was in fact to interfere with

Case No. 8:03-CV-2353-T-17TBM

the proceedings before this Court, not to alleviate imminent financial distress.

The Court also notes that in Section XXII B., Defendants, and subsidiaries and affiliates, are prohibited from:

> Commencing, prosecuting, continuing, or entering any suit or proceeding in the name of or on behalf of the Receivership Defendants, or any of its subsidiaries or affiliates.

The only reasonable reading of the TRO, given the above provisions, is that the filing of bankruptcy proceedings was prohibited.

The Court is not troubled by the fact that the TRO does not spell out the definition of "affiliate." If there was any question about the meaning of "affiliate" in the context of this case, there is an ordinary meaning. At the very least, "affiliate" means "closely connected." The extreme breadth of the definitional section of the TRO resolves any question about the meaning of "affiliate." The import of the definition of Defendants is that any related company is bound by the TRO. There is sufficient evidence in the record to establish the interrelatedness of the companies.

The Court concludes that there is no ambiguous provision in the TRO. The TRO is clear. The corresponding provision in the Preliminary Injunction is explicit, presumably because Defendants chose not to heed the clear command of the TRO the first time around.

Case No. 8:03-CV-2353-T-17TBM

IV. Sanctions

The Report and Recommendation recommends the award of $6,666.66 for work performed before March 10, 2004, and reasonable fees and costs, which have been submitted to the Court for determination.

The Receiver requests the award of $30,735.00 for fees, and $1,560.63 for costs, applying to the time after March 10, 2004, to which Defendant Connell objects as being disproportionate.

Defendant Connell requests that the Court reconsider the award of sanctions because the Receiver was compensated through settlement with Thomas C. Little in the amount of $30,000, and because Defendant Connell relied on advice of counsel.

After consideration, the Court overrules Defendant's objections and affirms the Report and Recommendation. Based on the facts presented by this case, together with the testimony of Defendants at the evidentiary hearing, advice of counsel is not a strong mitigator. It's unfortunate that the contempt proceedings were time consuming and labor intensive.

The Court therefore awards fees and costs in the amount of $38,962.29 ($6,666.66 plus $30,735.00 plus $1560.63), for which Defendants Olmstead and Connell are jointly and severally liable, to be paid from their personal assets.

Case No. 8:03-CV-2353-T-17TBM

**ORDERED** that Defendant Connell's objections are **overruled**, and the Report and Recommendation is **adopted** and incorporated by reference. The Motion for Contempt (Dkt. 38) is **denied** Billie Jo Pardee and Dee Hoffman. The Motion for Contempt (Dkt. 38) is **granted** as to Defendants Olmstead and Connell as to the $30,000 and the bankruptcy filings. The Court awards fees and costs in the amount of $38,962.29 to the Receiver, for which Defendants Olmstead and Connell shall be jointly and severally liable, to be paid from their personal assets.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this /s/ day of NOVEMBER, 2004.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

13