**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

**v.**                                                                               **Case No.  8:03-cv-2353-T-17TBM**

**PEOPLES CREDIT FIRST, LLC, et al.,**

    **Defendants.**

_____/

**O R D E R**

THIS CAUSE is before the court on the following motions:

1)     **Receiver's Second Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 205) and amendment thereto (Doc. 212), and Plaintiff's response (Doc. 216);

2)     **Receiver's Second Application for Payment for Services Rendered** (Doc. 206) and Plaintiff's response (Doc 215);

3)     **Receiver's Third Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 217), Plaintiff's response (Doc 220), Julie Connell's response (Doc. 230), and Peoples Credit First, LLC and Consumer Preferred, LLC's response (Doc. 256);

4)     **Receiver's Third Application for Payment for Services Rendered** (Doc. 218), Plaintiff's response (Doc. 219), Julie Connell's response (Doc. 231), and Peoples Credit First, LLC and Consumer Preferred, LLC's response (Doc. 257);

5)     **Receiver's Fourth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 253) and Plaintiff's response (Doc. 291);

6)     **Receiver's Fourth Application for Payment for Services Rendered** (Doc. 254) and Plaintiff's response (Doc. 292);

7) **Receiver's Fifth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 276) and Plaintiff's response (Doc. 293);

8) **Receiver's Fifth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 278) and Plaintiff's response (Doc. 294);

9) **Receiver's Sixth Application for Payment for Services Rendered** (Doc. 297) and Plaintiff's response (Doc. 315);

10) **Receiver's Sixth Application for Payment for Services Rendered** (Doc. 299)[1] and Plaintiff's response (Doc. 318);

11) **Receiver's Seventh Application for Payment for Services Rendered** (Doc. 300) and Plaintiff's response (Doc. 316);

12) **Receiver's Seventh Application for Payment for Services Rendered** (Doc. 301) and Plaintiff's response (Doc. 319);

13) **Receiver's Eighth Application for Payment for Services Rendered** (Doc. 309);

14) **Receiver's Eighth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 326) and Plaintiff's response (Doc. 343);

15) **Receiver's Ninth Application for Payment for Services Rendered** (Doc. 327) and Plaintiff's response (Doc. 344);

16) **Receiver's Ninth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 330) and Plaintiff's response (Doc. 345);

---

[1] As indicated, the Receiver has filed two documents captioned **Receiver's Sixth Application for Payment for Services Rendered**. (Docs. 297, 299). The documents are identical aside from having different attachments. The attachments to the first one reference the legal fees sought by the Receiver for the work *he* performed in May 2004. (Doc. 297). The attachments to the second reference the legal fees sought by the Receiver for the work performed *on his* behalf by attorneys and paralegals at Buchanan Ingersoll in May 2004. (Doc. 299). Thus, while the applications each request payment of $2,520.00 as the Receiver's fees for services rendered, on the second application it appears that Receiver really seeks $5,614.80 (80% of the total $7,018.50) as fees incurred by Buchanan Ingersoll during the same period. The FTC responded in kind. See (Docs. 315, 318).

2

17) **Receiver's Amended Tenth Application for Payment for Services Rendered** (Doc. 347) and Plaintiff's response (Doc. 350);

18) **Receiver's Tenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 346) and Plaintiff's response (Doc. 349);

19) **Receiver's Eleventh Application for Payment for Services Rendered** (Doc. 352) and Plaintiff's response (Doc. 354);

20) **Receiver's Eleventh Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 356) and Plaintiff's response (Doc. 359);

21) **Receiver's Twelfth Application for Payment for Services Rendered** (Doc. 357) and Plaintiff's response (Doc. 360);

22) **Receiver's Twelfth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 358) and Plaintiff's response (Doc. 361);

23) **Receiver's Thirteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 369) and Plaintiff's response (Doc. 372);

24) **Receiver's Thirteenth Application for Payment for Services Rendered** (Doc. 370) and Plaintiff's response (Doc 371);

25) **Receiver's Fourteenth Application for Payment for Services Rendered** (Doc. 393) and Plaintiff's response (Doc. 407);

26) **Receiver's Fourteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 394) and Plaintiffs' response (Doc. 403);

27) **Receiver's Fifteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 410), Plaintiff's response (Doc. 414), and Peoples Credit First, LLC and Consumer Preferred, LLC's objection (Doc. 446);

28) **Receiver's Fifteenth Application for Payment for Services Rendered** (Doc. 415), Plaintiff's response (Doc.

        422), and Peoples Credit First, LLC and Consumer Preferred, LLC's objection (Doc. 446);

29) **Receiver's Sixteenth Application for Payment for Services Rendered** (Doc. 435), Plaintiff's response (Doc. 440), and Peoples Credit First, LLC and Consumer Preferred, LLC's objection (Doc. 446); and

30) **Receiver's Sixteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 436), Plaintiff's response (Doc. 441), and Peoples Credit First, LLC and Consumer Preferred, LLC's objection (Doc. 446).

I.

On November 10, 2003, pursuant to its *ex parte* motion for a temporary restraining order, the Federal Trade Commission (hereinafter "FTC" or "Plaintiff") filed its application for the appointment of a temporary receiver. (Doc. 9). That same day, the district court appointed Mark J. Bernet, Esq., as the temporary receiver of the corporate Defendants, Peoples Credit First, LLC (hereinafter "PCF") and Consumer Preferred, LLC (hereinafter "CP").[2] (Doc. 9). With respect to compensation, it ordered:

> that the Receiver is entitled to reasonable compensation for the performance of all duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred, solely from the assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants. The Receiver shall file with the court and serve on the parties periodic requests for the payment of such compensation, with the first such request due prior to sixty days after the date of this Order. The Receiver shall not increase the Receiver's fee bill to the receivership estate without prior approval of the court.

---

[2]CP was formerly known as Consumer First, LLC.

Id. at 18.³  On December 23, 2003, the district court entered an Order of Preliminary Injunction upon stipulation by the parties.⁴ (Doc. 26).  In early 2004, the Receiver submitted his first motion for authority to pay Buchanan Ingersoll, LLC, for services rendered (Docs. 51, 57), and his first motion for payment of his attorney's fees (Doc. 52).⁵  The Receiver has filed thirty additional applications related to fees since that time.

On September 15, 2005, the court referred this case to mediation in hopes of resolving all outstanding fee applications and/or motions.  (Doc. 413).  On October 6, the court appointed Thomas T. Steele, Esq., as mediator after the parties indicated an inability to agree on a mediator.  Mediation was held on two separate days in November 2005.  The parties were unable to resolve the matter of fees through mediation.

On December 6, 2005, the court conducted a status conference on the pending fee applications. Subsequent to the hearing, the court requested supplemental filings by the Receiver and the FTC.  By his supplemental response (Doc. 456), the Receiver claims a total amount due through September 30, 2005, of $156,880.40 in fees and $4,328.18 in costs on his account, and $202,691.01 in fees and $25,186.84 in costs owed his firm.⁶  In its supplemental

---

³The Order of Preliminary Injunction states the same.  See (Doc. 24 at 19).

⁴On January 14, 2004, the district court extended the Receivership to include Dynamic Fulfillment & Services, LLC.  (Doc. 37).  On November 12, 2004, the district court extended the Receivership to include Foundation Commercial Properties, LLC; Product Dynamics, LLC; SoHo Holdings, LLC; and Generation Housing, LLC.  (Docs. 280, 285).  On November 24, 2004, the district court extended the Receivership to include Nu Products, LLC, d/b/a Royal Pineapple.  (Doc. 304).

⁵The district court granted these motions in October 2004.  See (Docs. 259-60).

⁶The court notes that these sums vary upward somewhat from the figures the Receiver urged at the status conference.  The Receiver's supplemental response does not account for the disparities.

5

response (Doc. 458), the FTC reiterates its objections to certain broad categories of billings such as time spent expanding the receivership, hours claimed for litigating bankruptcy matters, work performed on a contempt proceeding, alleged over charges for work by a former paralegal, John Pelletier, charges for time spent negotiating access to documents, hours billed for reviewing fee applications, certain "soft costs," and time spent billing allegedly irrelevant matters. The FTC also objects to the entirety of the "holdback" amount itemized by the Receiver. In a reply (Doc. 465), the Receiver assures the court that he has addressed the FTC's concerns with the billings for the bankruptcy and contempt litigation and the total billings now submitted do not include those sums. Otherwise, the Receiver defends the outstanding balances and seeks to get the last word on the other areas of dispute.

II.

As set forth above, the court has already determined that the Receiver is entitled to *reasonable* compensation and out-of-pocket expenses for the performance of his duties under the order of appointment. In Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), the court set out twelve factors to be considered in determining the reasonableness of fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The manner in which the

Johnson factors influence an award of fees must be elucidated by the court.[7]  See In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir. 2000); NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1336 (11th Cir. 1987) (quoting King v. McCord, 621 F.2d 205, 206 (5th Cir. 1980)).

### III.

Upon consideration of the pending fee applications, the court concludes that some reductions in the total sought by the Receiver and his law firm are appropriate. These reductions are not necessarily a reflection on the quality of work performed by either. Their work has been competent, professional and generally a service to the court and the FTC in its efforts to obtain a fund from which restitution may be made in this case. However, in the court's view and for the reasons set forth below, the fees sought are excessive.

Initially, based on the court's experience of working nearly 29 years in this market and handling numerous fee disputes, it is proper to conclude that the hourly rates sought by the Receiver and lawyers in his firm are reasonable. As noted at the hearing, however, in the

---

[7] Under fee shifting statutes, the court looks to the lodestar approach to determine a reasonable fee. By this approach, the value of the lawyer's services is initially determined by the product of hours reasonably expended multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting Norman, 836 F.2d at 1299). Thereafter, the court considers the reasonableness of hours expended. It is appropriate for the court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment. In reviewing petitions for attorney's fees, the court exercises its discretion in determining what constitutes reasonable hours. The lodestar as calculated in Hensley presumptively includes the Johnson factors, see Norman, 836 F.2d at 1299, and the court has been guided by the lodestar approach in its review of these applications.

7

court's experience the hourly rates billed for the work of paralegals in this matter, billed at varying hourly rates of $120.00 and up, are excessive, especially in light of the type of services often performed by these individuals.  In the court's view, a uniform hourly rate of $90.00 per hour is the fair and reasonable rate for this work and the applications in this respect should be reduced accordingly.  The larger problem is with the hours billed, and, in a few instances, the costs expended.

The court has reviewed and compared each of the billing statements.  As a general observation, it is worth noting at the outset that the primary responsibility of the Receiver in this instance was to collect and care for the assets of the properties of an otherwise passive receivership.  While the court does not begrudge the extensive work of the Receiver in identifying the entities appropriately brought within the receivership or his diligence in the winding down of these entities, the court does find a number of the parties' objections well taken.  A review of the applications confirms that there was billing for matters that were unnecessary.  As just one example, the work done early on in relation to appraisals or possible sale of mailing lists or properties was premature.[8]  It is not inappropriate to question the considerable amount of work done on the attorney client privilege issue early on as well. While some research was undoubtedly necessary, the billings were excessive.  In other instances, even if the billings reflect on arguably appropriate work, the billings are excessive by reason of duplication of efforts by the Receiver, lawyers in his firm and paralegals. Examples of this include the billings for review of correspondence, drafts of pleadings, pleadings or orders, and billings related to motions, appeals or insurance issues.  Many phone

---

[8]The court has only *very* recently entered summary judgment on behalf of the FTC and as of yet there has been no discussions with the court on the future course of or disposition of the receivership estate.

calls reflect a duplication of effort as well. Additionally, there are any number of instances when clerical work or work that could have been done by a paralegal or secretary was billed by an attorney. The court also questions why the Receiver himself billed so much legal work where he established a procedure for having such work done by lawyers in his firm at a lower hourly rate. While insurance was not an insignificant matter for the Receiver to be concerned about, the court agrees with the parties that these billings are excessive, as were the billings related to document production, and the total time spent reviewing fee bills. This court believes that in the exercise of proper billing judgment, the Receiver and his firm would not have billed a client for all the work they itemize in these applications and they should not do so here merely because they are dealing with a receivership with a substantial estate. For these reasons, a reduction on the total hours billed is appropriate.[9]

At arguments, the FTC urged that the fee should amount to no more than 80% of the total billing after certain other reductions were made and that none of the so-called "holdback" should be awarded. However, the Receiver's reply has adequately addressed certain of these other reductions and the court accepts those representations. Upon consideration, a reduction of 20% would cut too deep and disallow legitimate billing. In the court's view, a reduction of 10 to 15% is more appropriate.

As for costs, the Order of Preliminary Injunction granted the Receiver "out-of-pocket expenses." By the Receiver's latest calculation, he is owed $4,328.18 in costs and his firm is owed $25,186.84 in costs through September 30, 2005. The FTC challenges the so-called soft

---

[9]After reviewing the applications, the court finds it impossible to address the matter on a line by line basis. As indicated, the court has elected to impose a percentage reduction of the totals now claimed by the Receiver, but only after considerable review of the billing statements.

9

costs related to copying expenses, online searches, overnight/courier mail, secretarial overtime and parking vaildations. In the usual course for matters covered by the federal statutes, none of those expenditures would likely be taxed against a losing party, see 28 U.S.C. § 1920, and there is some basis to justify a conclusion that they should not be fully compensated here. First, the ultimate "losers" in this instance are the thousands of duped consumers that fell for the Defendants' advance fee scheme. Every dollar paid out in fees and costs is a dollar unavailable to go toward restitution. Second, while it may be the norm for this firm to use express mail and couriers routinely in the conduct of its business, in most instances here it is likely that it was an unnecessary extravagance.[10] As for the numerous computer searches billed, they are mostly undocumented and the court has no basis to evaluate whether the search was necessary or not.[11] What is clear is that those conducting the searches were also billing their time as well. As for copying costs, the rate billed per page is not exceptional, but again the court has no basis to evaluate whether the copies were necessary for use in the litigation or done merely for the convenience of the Receiver. In any event, the district judge originally awarded the Receiver his out-of -pocket expenses and they will be granted on these applications.[12] Henceforth, however, the Receiver and his firm shall cease the routine use of overnight or express mail or same day couriers except in exceptional

---

[10]The court has personally received courier delivered copies of pleadings or correspondence of a routine nature that could have and should have been sent via regular mail.

[11]The court presumes the Receiver has only billed such amount of these searches as are the actual out of pocket costs to him and the firm.

[12]Henceforth, the Receiver shall not seek costs for secretarial overtime, parking validations, mileage payments and other such overhead items.

10

circumstances that shall be documented in any subsequent fee application. On-line searches and copying costs

shall be documented as to purpose and necessity on all future applications. Copies of bills related to the costs for these services shall be appended to the applications as well.[13]

IV.

Accordingly, each of the applications set forth above is GRANTED insofar as it requests an award of expenses. The applications also are GRANTED in part insofar as they seek fees. The Receiver shall recalculate the amounts owed himself and his firm to account for the court's reduction in the hourly rate for paralegals to $90.00 per hour. From these new totals, the Receiver shall deduct 12.5% to account for the reductions determined appropriate by the court. The Receiver's recalculations of these sums shall be filed with the court so that an Order directing payment may be made. Copies of the calculations shall be served on the parties who may file their objections in the usual course.

**Done and Ordered** in Tampa, Florida, this 21st day of December 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[13] From this point forward, where the Receiver assumes to act as an attorney, instead of using less costly attorneys from his firm, he shall provide justification for his doing so. Paralegals shall not bill for purely administrative or clerical duties which may be handled by secretaries or couriers.

11