**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                                    Case No.  8:03-cv-2353-T-TBM

**PEOPLES CREDIT FIRST, LLC, et al.,**

    **Defendants.**
_____/

## **O R D E R**

THIS CAUSE is before the court on the following:

(1)     **Receiver's Seventeenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll, PC** (Doc. 520) and Plaintiff's response in opposition (Doc. 526);

(2)     **Receiver's Seventeenth Application for Payment for Services Rendered** (Doc. 521) and Plaintiff's response in opposition (Doc. 526);

(3)     **Receiver's Eighteenth Application for Payment for Services Rendered** (Doc. 559) and Defendant Olmstead's response in opposition (Doc. 565); and

(4)     **Receiver's Eighteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 561), the Receiver's supplement to his eighteenth applications (Doc. 563), and Defendant Olmstead's response in opposition (Doc. 565).

By his seventeenth applications, the Receiver claims a total amount due of $29,103.00 in fees[1] and $91.33 in costs on his account (Doc. 521), and $2,002.50 in fees owed

---

[1] According to the Receiver, this represents 128.9 hours worked at an hourly rate of $225.00.  (Doc. 521 at 3).  By the court's calculation, the total fee amount is $29,002.50 (a difference of $100.50).

his firm, Buchanan Ingersoll PC[2] (Doc. 520), for the three-month period October 1, 2005, through December 31, 2005. The FTC objects to certain categories of billings such as time spent preparing and revising fee applications, preparing for and attending the mediation, costs for express mail charges, and hours billed for the Receiver's time (as opposed to attorneys in his firm who bill at a lower hourly rate) on matters involving the receivership estates. In light of these objections, the FTC requests that the court reduce the Receiver's fee requests by at least $10,656.83. (Doc. 526).

By his eighteenth applications, the Receiver claims a total amount due of $42,502.50 in fees and $76.74 in costs on his account,[3] (Doc. 559), and $9,180.00 in fees and $828.94 in costs owed his firm[4] (Doc. 561), for the three month period January 1, 2006, through March 31, 2006. By a supplemental statement (Doc. 563), the Receiver represents that, subject to

---

[2] According to the Receiver, this represents a total of 17.1 hours worked by "professionals and paralegals" at a blended hourly rate of approximately $117.10. (Doc. 520 at 3). The statements submitted by the Receiver, however, reveal a total of 18.7 hours of work by paralegal Cynthia J. Sargent (8.4 hours) and an individual identified only as "M. Diaz-Clark" (10.3 hours). Chambers contacted the Receiver's office and was advised by his assistant that Mayling Diaz-Clark is a paralegal at Buchanan Ingersoll office in Miami. Because both Ms. Diaz-Clark and Ms. Sargent are paralegals, the claim for a blended hourly rate is inappropriate as the court has found, and the Receiver acknowledges, that the appropriate rate for paralegals in this case is $90.00.

[3] According to the Receiver, this represents 188.9 hours worked at an hourly rate of $225.00.

[4] According to the Receiver, this represents a total of 65.2 hours expended by "professionals and paralegals" at a blended hourly rate of approximately $140.80. (Doc. 561 at 3). The Receiver represents that a $90.00 hourly rate for paralegals was utilized determining this rate. Id. at 10. The statements submitted by the Receiver reveal a total of 29.3 hours of work by paralegal Mayling Diaz-Clark, 6.2 hours of work by an individual identified as R. Oliver, 2.0 hours of work by an individual identified as A. Villach, 12.9 hours of work by an individual identified as B.J. Delaney, 9.1 hours of work by an individual identified as L.K. Goodwin, and 5.7 hours of work by attorney S.C. Davis. See (Doc. 561-2).

court approval, he and Plaintiff have agreed that the law firm's eighteenth application should be reduced by a total sum of $1,250.00, leaving a net request on that application of $7,930.00 in fees and $828.94 in costs. (Doc. 563). The Receiver represents further that, subject to that adjustment, he is authorized to advise the court that Plaintiff does not object to the amounts sought in his eighteenth application or the law firm's eighteenth application. Defendant Olmstead urges the court to deny the applications outright and he contends that the applications were filed out of time without explanation. He urges the court to deduct the fees (1) sought in connection with the Receiver's involvement in state court matter of his divorce because the Receiver's involvement was unjustified, (2) for mismanagement of the receivership properties, (3) for misrepresentations he made to the court, and (4) for appellate work. (Doc. 565).

I.

As set forth in the Order dated December 21, 2005, see (Doc. 470), the court has already determined that the Receiver is entitled to *reasonable* compensation and out-of-pocket expenses for the performance of his duties under the order of appointment. In Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), the court set out twelve factors to be considered in determining the reasonableness of fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results

obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The manner in which the Johnson factors influence an award of fees must be elucidated by the court.[5]  See In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir. 2000); NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1336 (11th Cir. 1987) (quoting King v. McCord, 621 F.2d 205, 206 (5th Cir. 1980)).

II.

A.

Upon consideration of the Receiver's seventeenth and eighteenth fee applications for fees sought on his behalf, the court again concludes that while the hourly rate sought by the Receiver is reasonable and warranted under the circumstances, some reduction in the total fees sought by the Receiver is appropriate. This reduction is not necessarily a reflection on the quality of work performed. As previously indicated, the court finds that the Receiver's work

---

[5] Under fee shifting statutes, the court looks to the lodestar approach to determine a reasonable fee. By this approach, the value of the lawyer's services is initially determined by the product of hours reasonably expended multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting Norman, 836 F.2d at 1299). Thereafter, the court considers the reasonableness of hours expended. It is appropriate for the court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment. In reviewing petitions for attorney's fees, the court exercises its discretion in determining what constitutes reasonable hours. The lodestar as calculated in Hensley presumptively includes the Johnson factors, see Norman, 836 F.2d at 1299, and the court has been guided by the lodestar approach in its review of these applications.

has been competent, professional and generally a service to the court and the FTC in its efforts to obtain a fund from which restitution may be made in this case. However, in the court's view and for the reasons set forth below, the problem is with the hours billed and costs expended.

The court has reviewed each of the billing statements reflecting the Receiver's work and finds that a few adjustments should be made either because the billings appear excessive, unnecessary or contrary to the exercise of good billing judgment. Thus, on the seventeenth application, the court calculates that the Receiver billed for at least 18.5 hours for showing of the property at Hale Avenue or the Bayshore Royal property. On the eighteenth application, the court calculates that the Receiver billed for at least 11.2 hours for similar visits to the property that also appear unnecessary or at least excessive. These visits are on top of considerable other work performed by the Receiver in connection with the sale of these properties. The court has previously authorized the payment of $73,750.00 to the real estate broker handling the sale of the Hale Avenue property.[6] See (Docs. 489 at 2; 497-2 at 2). There is no adequate demonstration why all the visits or showings the Receiver now seeks compensation for could not have been handled by the broker. Giving the Receiver the benefit of the doubt that some of this work was appropriate and should not all be stricken, the court reduces these 29.7 hours by one-half (14.85 hours). Regarding the fees for the legal and other

---

[6]The court also previously authorized a sales commission not exceeding 6% in relation to the sale of the Bayshore Royal Condominium Unite 605 for the agreed upon price of $260,500.00. (Doc. 530). Presumably that sale went through, although the docket does not reflect that the Receiver filed a summary report on the sale.

work performed by the Receiver in connection with this (or other real) property, I make no further reductions on either application.

Regarding work the Receiver performed in relation to the fee mediation and time spent on preparing fee-related calculations and pleadings as reflected in both applications, the court agrees with the FTC that some adjustments are necessary. The Receiver bills at least 55.6 hours of work related to the preparation and revision of fee applications and the mediation of the fee dispute. While recognizing that some of this work was made necessary by court order, after completing a line-by-line review of the hours claimed in relation to such work, the court finds the time expended clearly excessive. Such sums in toto would be inappropriate to bill a client in the exercise of good billing judgment. This is especially so in relation to the 30 plus hours related to the preparation for and attendance at the mediation. These total hours are reduced by fifteen (15.0) hours.

Regarding the Receiver's Eighteenth fee application, the court questions the Receiver's billing of at least 18.5 hours for work performed as an intervenor in the divorce proceedings of the Olmsteads. Upon my review, the majority of this work is legal work which could have been performed by the Receiver's attorneys at Buchanan Ingersoll at a lower hourly rate. While the Receiver bills at an hourly rate of $225.00 per hour, his pleadings suggest that the firm bills at a blended rate of $140 per hour. In addition to his own billings, his eighteenth application for approval to pay the fees and costs of his firm seeks compensation for at least 15.3 hours for its work in the divorce matter as well. Previously, this court cautioned the Receiver that where he assumed to act as his own counsel, he was to provide justification for his doing so. (Doc. 470 at 11). The court can find only limited

justification for this work on this application as opposed to having his firm handle the work. Accordingly, the Receiver's hours for legal work performed in the Olmstead divorce case are reduced by one-half (9.25 hours). In summary, the Receiver's request for compensation under both applications is reduced by $8,797.50 (39.1 hours x $225.00 per hour).

B.

Regarding the seventeenth application for work performed by Buchanan Ingersoll, the court initially rejects the $117.10 "blended" hourly rate sought by the Receiver for work performed by paralegals. This court previously concluded that $90.00 was the "fair and reasonable rate" for work performed by paralegals in this market and the rate to be awarded in this case. See (Doc. 470 at 8). The court also finds objectionable, the billings by "C.J. Sargent" for 4.4 hours for " comprehensive review of documentation with respect to [various receivership entities]." There is no showing why such review was necessary at this time or how the Receivership benefitted from this work. Accordingly, those 4.4 hours of paralegal time are stricken. The court makes no reduction beyond that to which the parties agreed (Doc. 563) on the application for approval to pay Buchanan Ingersoll's *fees* in the eighteenth application.

C.

As for costs, the court previously cautioned the Receiver to cease the use of express mail except in exceptional circumstances. See (Doc. 470 at 10-11). Additionally, the Receiver was advised to document such circumstances in future fee applications should a justifying need arise to utilize such services. On review of the Receiver's statement in the seventeenth application pertaining to costs, $81.83 of the total $91.33 total costs sought are

7

for "Express Mail - UPS." <u>See</u> (Doc. 521, Ex. A). However, no explanation is offered and exceptional circumstances are not facially apparent. Thus, the court concludes that costs for express mail in the amount of $81.83 are not warranted.

As for the eighteenth fee application, the Receiver was previously cautioned that the court would require documentation as to certain costs. Specifically, the court cautioned that, "[o]n-line searches and copying costs shall be documented as to purpose and necessity. Copies of bill related to the costs for these services shall be appended to the application as well." (Doc. 470 at 10-11). A total of $108.30 is sought for copying costs yet no purpose for such is documented and there are no related bills attached relating to the copies. Additionally, while $400.00 for on-line research performed by J. Delaney on 2/3/06 is sought (and various other entries reflect time spent researching), the court finds costs for such unwarranted, particularly given the fact that the attorneys and/or paralegals performing such research also billed for their time. As for the $72.00 claimed in "Messenger/Delivery Service (Corporate Courier Inc.)," the exceptional circumstances, if any, giving rise to the necessity of such services were not documented and thus that amount is not awarded. As such, the costs requested on this application are reduced by $580.30.

III.

Accordingly, the **Receiver's Seventeenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll, PC** (Doc. 520), **Receiver's Seventeenth Application for Payment for Services Rendered** (Doc. 521), **Receiver's Eighteenth Application for Payment for Services Rendered** (Doc. 559), and **Receiver's Eighteenth**

**Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 561) are **GRANTED in part** to the extent set forth above. Thus, the Receiver is awarded $62,707.5 for his work performed between October 1, 2005, and March 31, 2006, and $9.50 in costs. Further, the Receiver is hereby authorized to pay Buchanan Ingersoll $9,217.00 in fees and $160.50 in costs for this same period. In all other aspects, the applications are **DENIED**.[7]

**Done and Ordered** in Tampa, Florida, this 7th day of September 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[7] In the eighteenth fee application, the Receiver indicated that attorneys' hours were billed at a blended rate of $140.80 per hour. It is not clear as to how that rate was calculated and it appears that this rate was calculated by blending in the paralegal rate of $90.00 per hour with various attorneys rates. Regardless, in future applications, the Receiver shall clearly identify paralegals and attorneys in the application. Paralegals will be compensated at the rate of $90.00 per hour. Attorney's hourly rates will be clearly set forth in the application as well. These attorneys will be compensated at a reasonable hourly rate for the hours expended.