UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

v.                                                                     Case No.  8:03-cv-2353-T-TBM

**PEOPLES CREDIT FIRST, LLC, et al.,**

    **Defendants.**
_____/

## O R D E R

THIS CAUSE is before the court on the following:

(1)     **Receiver's Nineteenth Application for Payment for Services Rendered** (Doc. 578) and Defendant Olmstead's response in opposition (Doc. 579);

(2)     **Receiver's Nineteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll & Rooney PC** (Doc. 580) and Defendant Olmstead's response in opposition (Doc. 588);

(3)     **Receiver's Twentieth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll & Rooney PC** (Doc. 581), Plaintiff's Notice (Doc. 586), and Defendant Olmstead's response in opposition (Doc. 589); and

(4)     **Receiver's Twentieth Application for Payment for Services Rendered** (Doc. 582), Plaintiff's Notice (Doc. 586), and Defendant Olmstead's response in opposition (Doc. 590).

By his nineteenth applications, the Receiver claims a total amount due of $54,292.50 in fees[1] and $234.70 in costs on his account (Doc. 578), and $32,609.00 in fees owed his firm,

---

[1] According to the Receiver, this represents 241.3 hours worked at an hourly rate of $225.00.  (Doc. 578 at 3).  By his account, the fees requested include a voluntary reduction of at least $6,750.00 from the actual value of services rendered.

Buchanan Ingersoll & Rooney PC,[2] and $2,723.90 in costs incurred (Doc. 580), for the three-month period April 1, 2006, through June 30, 2006.  Defendant Olmstead objects to both applications.  Regarding the fees sought by the Receiver on his own behalf, Mr. Olmstead claims that certain time entries are either excessive or unwarranted and should be reduced or denied.  In particular, he complains of the hours billed for auction preparation (particularly those concerning "dumpster" or trash pick-up services), telephone calls related to the auction, activities related to preparing the cars for sale, and numerous alleged "menial tasks" that could have been performed by other persons.  He also urges the court to reduce the requested fees on the basis that the Receiver's work has not been competent.  (Doc. 579).  As for the fees and costs sought by the Receiver on behalf of his firm, Mr. Olmstead claims the amount sought for appellate work should be reduced because the Receiver's motion to dismiss the appeal was denied, the 4.2 hours of work relating to Heidi Olmstead is excessive, the use of multiple attorneys was excessive, and online research should not be billed.[3]  The Federal Trade Commission (hereinafter "FTC"), did not file objections to either of the Receiver's nineteenth applications.

---

[2]According to the Receiver, this represents a total of 187.6 hours worked by "professionals and paralegals" at a blended hourly rate of approximately $173.82. (Doc. 580 at 3). The first billing statement reflects a total of 182.40 hours with 109.1 of the hours billed by attorneys R. Oliver, B. J. Delaney, S. C. Davis, and J. Gatto, and 73.3 of the hours billed by paralegals M. Diaz-Clark and L. K. Goodwin. Another billing statement reflects 5.2 hours billed at an hourly rate of $90.00 by paralegal M. Diaz-Clark. The Receiver indicates that the requested amount includes a voluntary writeoff of $4,544.00 in fees, or over twelve percent, and over $2,900.00 in costs.

[3]Mr. Olmstead correctly notes that the Receiver fails to break down the hourly rates of his attorneys on his nineteenth application. (Doc. 588 at 2).

2

By his twentieth applications, the Receiver claims a total amount due of $11,025.00 in fees[4] (Doc. 582), and $19,411.00 in fees and $3,626.05 in costs owed his firm[5] (Doc. 589), for the three-month period July 1, 2006, through September 30, 2006.  By way of its notice, the FTC states that it has been given permission by the Receiver to inform the court that he has agreed to a collective reduction of both bills by $6,930.00.  (Doc. 586).  Defendant Olmstead again contends the fees sought by the Receiver are excessive and should be denied or reduced.  He complains primarily that the Receiver should not bill at his hourly rate for performing simply administrative matters and he notes other instances whereby the Receiver should have used a subordinate to accomplish the task.  He also objects to the Receiver's billing for fee statements.  (Doc. 590).  As for the fees sought on behalf of the law firm, Mr. Olmstead primarily objects to the costs for on-line research and complains that the fees sought are excessive.  (Doc. 589).

I.

As set forth in the Order dated December 21, 2005, see (Doc. 470), the court has already determined that the Receiver is entitled to *reasonable* compensation and out-of-pocket

---

[4] According to the Receiver, this represents 49.0 hours worked at an hourly rate of $225.00.  (Doc. 582 at 3).

[5] According to the Receiver, this represents a total of 98.7 hours expended by "professionals and paralegals" at a blended hourly rate of approximately $196.67.  (Doc. 581 at 3).  The Receiver represents that a $90.00 hourly rate for paralegals was utilized determining this rate.  See (Doc. 581-2 at 7).  The statements submitted by the Receiver reveal a total of 1.8 hours of work by paralegal M. Diaz-Clark, 6.7 hours of work by paralegal L. K. Goodwin, 13.40 hours of work by attorney R. Oliver, 75.20 hours of work by attorney J. Gatto, and 1.60 hours of work by attorney B. J. Delaney.  Id.

3

expenses for the performance of his duties under the order of appointment. In <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), the court set out twelve factors to be considered in determining the reasonableness of fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The manner in which the <u>Johnson</u> factors influence an award of fees must be elucidated by the court.[6] See <u>In re Celotex Corp.</u>, 227 F.3d 1336, 1341 (11th Cir. 2000); <u>NAACP v. City of Evergreen, Ala.</u>, 812 F.2d 1332, 1336 (11th Cir. 1987) (quoting <u>King v. McCord</u>, 621 F.2d 205, 206 (5th Cir. 1980)).

---

[6]Under fee shifting statutes, the court looks to the lodestar approach to determine a reasonable fee. By this approach, the value of the lawyer's services is initially determined by the product of hours reasonably expended multiplied by a reasonable hourly rate. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Norman v. Hous. Auth. of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting <u>Norman</u>, 836 F.2d at 1299). Thereafter, the court considers the reasonableness of hours expended. It is appropriate for the court to exclude excessive, redundant, and unnecessary hours; hours which are inadequately documented; and hours which would be unreasonable for an attorney to bill the client or opposing counsel in the exercise of good billing judgment. In reviewing petitions for attorney's fees, the court exercises its discretion in determining what constitutes reasonable hours. The lodestar as calculated in <u>Hensley</u> presumptively includes the <u>Johnson</u> factors, see <u>Norman</u>, 836 F.2d at 1299, and the court has been guided by the lodestar approach in its review of these applications.

II.

A.

Upon consideration of the Receiver's nineteenth application for fees sought on his behalf (Doc. 578), the court again concludes that while the hourly rate sought by the Receiver is reasonable and warranted under the circumstances, some reduction in the total fees sought by the Receiver is appropriate. This reduction is not necessarily a reflection on the quality of work performed. As previously indicated, the court finds that the Receiver's work has been competent, professional and generally a service to the court and the FTC in its efforts to obtain a fund from which restitution may be made in this case. However, the court agrees with certain of Defendant Olmstead's objections, and upon its own independent review of the application, concludes that the hours requested by the Receiver on his nineteenth application should be reduced by ten (10) percent on the basis that some of the work was duplicative of work being performed by and billed by others, unnecessarily performed by the Receiver as opposed to others, and excessive in the exercise of good billing judgment.[7] Accordingly, the court approves the application to the extent of 217.17 hours.

---

[7]As examples, at least two attorneys for the Receiver and the Receiver claim a considerable number of hours for work performed strategizing, researching, writing, reviewing and revising pleadings in connection with jurisdictional questions and an effort to dismiss an appeal before the Eleventh Circuit. As another, there was unnecessary duplication of work and excessive billings on the Shelton and Precision subpoenas, and duplication on the sale and closing on Unit 605 property. Certain matters performed by the Receiver related to the Hale Avenue property, receivership property, and the auction, were excessive and/or could have been performed by a paralegal or other assistant at a considerable savings. For example, the Receiver spent an extraordinary amount of time with automobile mechanics or detailers employed in preparation for the auction. While such work was no doubt well-intended, it was unnecessary for the Receiver to "babysit" this work. Either the Receiver or his paralegal, but not both, were necessary at the auction previews, and the auctioneers or an assistant could have handled answering questions from prospective buyers. Multiple hours spent preparing a "to do" list or arranging a wire transfer are excessive in the exercise of good billing judgment.

B.

Regarding the Receiver's nineteenth application for funds to pay Buchanan Ingersoll & Rooney PC, a reduction of (at least) ten (10) percent of the total hours requested is appropriate by reason of duplicative or excessive work. The applications reflect the work of multiple attorneys researching, writing and revising the same legal matters, and in some cases, expending what I conclude is an excessive amount of time being on routine matters such as subpoenas. With all due respect, the time sought for all the work performed in relation to the appeal is simply excessive in the exercise of good billing judgment. Thus, the attorneys hours requested by the nineteenth application to pay the law firm are reduced by a total of 10.91 hours (at the average hourly rate of these attorneys).[8]

C.

Regarding the Receiver's twentieth applications, the Receiver and the FTC have agreed to a reduction of $6,930.00 from the total of these two applications. The court has independently reviewed both applications and agrees that reductions are in order. The court accepts the amount agreed upon by the Receiver and the FTC as the appropriate reduction insofar as the agreement relates to "fee bills," see (Doc. 586), but not to the extent it relates to costs.

---

[8] The hourly rates billed by attorneys Oliver, Gatto, and Delaney are set forth in the twentieth application. (Doc. 581-2 at 7). The hourly rate billed by attorney Davis is not. Chambers contacted the Receiver and was advised that Mr. Davis billed at an hourly rate of $265.00.

D.

As for costs, the Receiver is awarded $ 234.70 in costs on his nineteenth application (Doc. 578).

As for the costs requested on the applications for Buchanan Ingersoll & Rooney, PC (Docs. 580-81), this court previously cautioned that it would require documentation as to certain costs. Specifically, the court cautioned that, "[o]n-line searches and copying costs shall be documented as to purpose and necessity. Copies of bills related to the costs for these services shall be appended to the application as well." (Doc. 470 at 10-11). Here, a total of $660.11 is sought for copying costs on the applications, yet no purpose for such is documented and there are no related bills attached relating to the copies. Additionally, the applications reflect a total of $5,388.94 for on-line research without documentation of purpose or necessity. Once again, the court must conclude that the costs for photocopying should be denied, as should the costs for the on-line searches, particularly given the fact that the attorneys and/or paralegals performing such research also billed for their time. Further, the court previously cautioned the Receiver to cease billing for the use of express mail except in exceptional circumstances. The Receiver was advised to document such circumstances in future fee applications should a justifying need arise to utilize such services. On review of the Receiver's statement in the nineteenth application pertaining to costs, $10.00 is sought for "Express Mail - UPS." See (Doc. 580-2 at 13). Because no exceptional circumstance or justifying need was alleged, that amount is unwarranted.

III.

Accordingly, the **Receiver's Nineteenth Application for Payment for Services Rendered** (Doc. 578), the **Receiver's Nineteenth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll & Rooney** (Doc. 580), the **Receiver's Twentieth Application for Authority to Pay for Services Rendered by Buchanan Ingersoll PC** (Doc. 581), and the **Receiver's Twentieth Application for Payment for Services Rendered** (Doc. 582) are **GRANTED in part** to the extent set forth above. Thus, the Receiver is awarded $56,423.25[9] for his work performed between April 1, 2006, and September 30, 2006, and $234.70 in costs. Further, the Receiver is hereby authorized to pay Buchanan Ingersoll & Rooney $46,168.44 in fees[10] and $303.30 in costs[11] for this same period. In all other aspects, the applications are **DENIED**.

**Done and Ordered** in Tampa, Florida, this 18th day of December 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Shaun Olmstead

---

[9]This total includes $48,863.25 on the nineteenth application (217.17 hours at $225.00 per hour) and $7,560.00 on the twentieth application ($11,025.00 requested fees minus an agreed upon reduction of $3,465.00).

[10]This amount was calculated by adding the total fees claimed on the nineteenth application minus 10.91 attorneys' hours requested at the average hourly rate of the attorneys and the total fees claimed on the twentieth application minus the agreed upon reduction of $3,465.00.

[11]Thus, the reimbursable costs on the nineteenth application (Doc. 580) are $283.40, and on the twentieth application (Doc. 581) are $19.90.